**UNITED STATES of America,**
**Plaintiff,**

v.

**Roger Charles CROBARGER,**
**et al., Defendant.**

**No. 2:95 CR 119 JTG.**

United States District Court,
D. Utah,
Central Division.

Nov. 1, 2004.

Walter F. Bugden, Bugden & Isaacson LLC, Salt Lake City, UT, Kenneth R. Elliott, Law Offices of Elliott and Elliott, Vista, CA, Gil Athay, Salt Lake City, UT, Robert L. Booker Booker & Associates, Franklin, TN, Delano S. Findlay, Murray, UT, for defendants.

Paul M. Warner, Richard D. McKelvie, Stewart C. Walz, Michael S. Lee, U.S. Attorney's Office, Bruce C. Lubeck, Judge, Third Circuit Court, West Valley, UT, Laurie J. Sartorio, The Hague, NL, for U.S.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court on inmate-defendant Roger Crobarger's Motion to Compel the United States Attorney for the District of Utah to file a Rule 35(b) Motion for reduction of his sentence which he is now serving at the United States

Bureau of Prison's facility at Florence, Colorado.[1]

The court will consider and determine four issues in order to resolve defendant's Motion to Compel the United States Attorney for Utah to file the requested Rule 35(b) Motion. *First,* whether adequate consideration was given by defendant to support a valid agreement to file a Rule 35(b) motion. *Second,* whether an Assistant United States Attorney for the District of Colorado can bind and therefore require the United States Attorney for the District of Utah to file in the District of Utah a Rule 35(b) motion on behalf of defendant. *Third,* whether AUSA Richard McKelvie (Utah) consented to file a Rule 35(b) motion in the District of Utah, and if so whether such consent was binding on the United States Attorney for the District of Utah. *Fourth,* whether AUSA McKelvie (Utah) ratified the agreement between AUSA George Gill (Colorado) and defendant Crobarger that a Rule 35(b) motion would be filed on his behalf, and if so whether such ratification was binding on the United States Attorney for the District of Utah.

Under the facts and circumstances of this case, this court rules in the affirmative as to the first issue, and in the negative as to the second, third and fourth issues. Accordingly, the court denies defendant's motion to compel the United States Attorney for the District of Utah to file the requested Rule 35(b) motion.

**1.** Defendant also filed a Motion to Compel Production of a confidential internal memorandum by Assistant United States Attorney Richard McKelvie (Utah) to the Prosecution Screening Committee which is maintained in the offices of the United States Attorney (Utah). The memorandum has to do with the submission by AUSA (Utah) McKelvie of the request by AUSA (Colorado)George Gill that

## PROCEDURAL HISTORY

The defendant has had two prior criminal proceedings in the United States District Court for the District of Utah. The first proceeding was before this court on an Indictment regarding drug trafficking. The defendant was represented by counsel in connection with this Indictment. Defendant plead guilty, and on January 24, 1997, was sentenced by this court to a term of incarceration for 240 months.

The second proceeding had to do with threatening a witness in a case which arose from the aforesaid drug trafficking. This proceeding resulted in a jury conviction before Judge David Sam in this District. In that proceeding defendant represented himself, with the assistance of standby counsel, and was found guilty on September 17, 1997. Sometime between the end of trial and sentencing, defendant aided the U.S. Marshal's Office in stopping a planned jail escape outside the Federal District Courthouse in Salt Lake City. This assistance was believed to have prevented the real possibility of serious harm or death to U.S. Marshals and inmates. Accordingly, at the sentencing hearing, the U S. Marshal's Office presented evidence to the court regarding defendant's substantial assistance in aborting the jail escape, and the court found a basis to depart downward under 18 U.S.C. § 3553. Defendant was sentenced to a term of incarceration of 60 months, with supervised release for 36 months, to run consecutively with the sentence imposed by this court in defendant's original drug trafficking case.

the United States Attorney for Utah file a Rule 35(b) motion on behalf of defendant Crobarger. At a previous hearing, the Court granted an oral motion by the U.S. Attorney for Utah, in which Utah agreed to produce and in open court did produce the memorandum to the said screening committee, thus rendering moot defendant's Motion to Compel Production of that document.

After sentencing, on December 1, 1998, AUSA McKelvie filed a Rule 35(b) motion on behalf of the defendant, which was granted by Judge Sam. Defendant's sentence was thereby reduced by altering the 60 month consecutive sentence to run concurrently with the sentence of 240 months which had been imposed by this Court in defendant's original drug trafficking case.

The motion now before this court is defendant's Motion to Compel the United States Attorney for the District of Utah to file a Rule 35(b) motion on behalf of defendant to reduce the remainder of his sentence of 240 months or to eliminate it as "time served". Defendant originally was represented by Richard Van Wagoner of the Salt Lake City law firm of Snow, Christensen and Martineau, and the United States originally was represented by Richard McKelvie, AUSA for the District of Utah. However, both attorneys removed themselves prior to a scheduled evidentiary hearing because of the foreseeability that each would be a witness in the matter now before the Court.[2] Accordingly, former counsel for the defendant was replaced by Walter Bugden of the Salt Lake City law firm of Bugden and Issacson, and former counsel for the United States was replaced by Stewart Walz, AUSA for the District of Utah. An evidentiary hearing in this matter was held. Thereafter, additional post hearing briefs were filed, oral argument was presented and the matter was taken under advisement.

## FACTUAL BACKGROUND

This case arose in the context of a criminal investigation into drug distribution at the United States Bureau of Prison's FCI facility at Florence, Colorado. The said investigation by the FBI and the BOP had to do with information that a food service worker, Walter Walsh, allegedly was distributing drugs in the BOP FCI–Florence facility. George Gill was the AUSA in Colorado assigned to the General Crimes and Drug Task Force, which included the aforesaid drug distribution investigation.

Defendant became involved with the investigation when he was approached by certain inmates who were working with Walsh in bringing drugs into the prison. As a result, defendant went to BOP officials with that information, expressing his willingness to cooperate in the aforesaid investigation and possible prosecution.

For years the FBI, the Department of Justice, and the BOP reportedly had been frustrated by not being able to pin down and use information they had received on Walsh. This was largely due to being unable to proceed because inmates were not willing to testify against him.[3] Defendant was important to the government in part because he was viewed as having contacts outside the prison that could supply contraband. Two other inmates, Roberson and Brown, were also involved in the government's sting operation. Both were viewed by the government as being needed by Walsh as necessary facilitators for the distribution of the contraband within the prison.[4]

2. After argument and the submission of legal memorandums, this court entered an order on December 1, 2003, requiring an evidentiary hearing as a predicate to a ruling on the issue of whether a Rule 35(b) motion on behalf of defendant should be compelled to be filed by the United States Attorney (Utah) in the District of Utah.

3. AUSA (Colorado) Gill testified that there had been at least six prior different files on Walsh which never resulted in indictment due to the lack of witness cooperation.

4. Roberson was not a government witness because he refused early on in the investigation to cooperate further without a deal for reduction of his sentence, which was unacceptable to the government.

Defendant met with AUSA Gill one or two times prior to the time that Walsh was indicted. After Walsh was indicted, AUSA Gill met with defendant at least six different times in connection with his preparation for trial. As a result of defendant's cooperation with the government, defendant was moved to a high security level in the Florence facility, and later to different prisons for his security.

AUSA Gill testified at the evidentiary hearing that prior to this case he had submitted four or five previous motions for reduction of an inmate's sentence. Those prior motions involved other cooperative witnesses in other prison cases, including two cases outside of Colorado. AUSA Gill also testified that he does not normally offer a reduction until the individual had fulfilled his obligation to the government in order to avoid any possible *Giglio* matters, as well as to insure continued cooperation throughout the trial.[5] Relative to the matter before the court involving Crobarger, AUSA Gill testified that Walsh's trial was set and vacated six times over a three year period, including a Change of Plea and a subsequent Withdrawal of Plea. After these delays, AUSA Gill prepared for trial in anticipation of a March 2003 trial date. Prior to that date, however, Walsh once again sought a Change of Plea. Gill testified that he agreed to the change of plea to a misdemeanor because of unspecified problems in the case. Even as to such a plea, AUSA Gill had reservations as to whether the judge would accept Walsh's plea given the history of the case and the practice of that judge.[6]

After Walsh's provisional plea on March 7th, AUSA Gill testified that he went to FCI–Englewood to meet with defendant to inform him and Brown (another inmate witness) what had occurred in the case. This was sometime between March 12th and March 17th. At that time, AUSA Gill testified that he told defendant that he did not know what would happen in regards to the ultimate disposition of the case, but that since defendant had been involved in the matter for three years, and in spite of his reservations, he would agree to file a Rule 35(b) motion on behalf of defendant. At that time, AUSA Gill asked for defendant's case information and told defendant that he (Gill) was going to recommend "time served" for defendant's participation and cooperation with the government. However, Gill also told defendant that the final decision regarding possible Rule 35(b) reduction of sentence would rest with the judge. There was no discussion of the role the AUSA–Utah would be asked to play, or any reference to the proposed motion being filed in the District of Utah.[7]

---

5. Mr. Van Wagoner testified that sometime during the year 2000 he had been contacted by defendant regarding his cooperation with the government and his desire to seek a Rule 35(b) motion. Mr. Van Wagoner contacted AUSA Gill at that time regarding the possibility of filing such a motion, but AUSA Gill "cut off" Mr. Van Wagoner and said he would not discuss it at that time.

6. On March 7, 2003, Walsh entered a provisional plea. However, the judge reserved approval until he could review the presentence report. AUSA Gill testified that the judge stated that he was very much undecided whether or not he would accept Walsh's conditional plea.

7. AUSA Gill testified concerning his discussion with defendant:
 I told him enough is enough on this case. I have no clue what the future is going to hold with respect to the ultimate disposition of the case but Crobarger had been involved with this case for three years and I told him in spite of my reservations about going forward and the Giglio problems and all[,] that I was ready to do what was necessary on his behalf. I told him I would file a Rule 35(b). He did give me the information of his cases out of the State of Utah and we

AUSA Gill testified that at the time he offered the Rule 35(b) motion he considered that defendant was under an ongoing obligation to continue to cooperate and act for the government in any witness capacity in the event that a trial or further proceeding should occur. Gill told defendant that he was not sure whether Walsh would attempt to withdraw his plea again, or whether the judge would accept his plea. AUSA Gill testified that defendant promised to continue to cooperate regardless of how long the case took to resolve, includ-

> had a discussion on what benefit that he would receive and our discussions led to an agreement that I would recommend time served in his motion for reduction of sentence. I told him that I couldn't make, you know, the final decision on this. It's completely up to the Judge to decide what he's going to do with the 35(b) and he's going to look at all the circumstances in this case before making that decision[,] but I would go as far as filing, seeing that it was filed, a 35(b) and that the recommendation would be time served.
>
> Transcript of Evidentiary Hearing March 11, 2004, 21–22:13–6.

**8.** AUSA Gill testified at the evidentiary hearing as follows:

> I told him even though the defendant [Walsh] had changed his plea to guilty once again there was no assurances that there might not be another motion to withdraw his plea of guilty and this Judge may in my mind very well have allowed the defendant to withdraw his plea of guilty again. I didn't know whether the Judge after reviewing the presentence investigation report and looking at the entirety of the plea bargain that we reached that he would accept it so I told Mr. Crobarger in the event that we run into the same problems that we've had over the past three years you are going to be required to assist the government including testifying at the trial of Walter Walsh. I said whether you're in the system or if you're out you will be subpoenaed for that purpose and he agreed.
>
> Transcript of Evidentiary Hearing March 11, 2004, 22:10–23.
> AUSA Gill further testified:

ing testifying at any future hearings or trials if necessary.[8]

AUSA Gill also testified that at the time he offered the Rule 35(b) motion, he believed he had the authority to bind and intended to bind the United States government, including the United States Attorney's Office in the District of Utah.[9] AUSA Gill stated he had filed two previous Rule 35(b) motions in other Districts outside Colorado, and in both cases he contacted the local AUSA after the agreement with the defendant had been made only to obtain the local format.[10] In both cases, he

> Q: So after, at the point that you made the promise to file the Rule 35 did Defendant have a continuing obligation under the agreement that you reached with him?
> A: He did.
> Q: And the future performance that he had promised you was what?
> A: That he would cooperate with the government, testify if necessary at any trial or any other future hearing in the event that this matter didn't go to sentencing, judgment and commitment.
>
> Transcript of Evidentiary Hearing March 11, 2004, 22–23:24–8.

**9.** AUSA Gill testified:

> Q: "And when you made the agreement with Roger Crobarger and said I will make a Rule 35 motion on your behalf, . . . did you believe that you needed the authority of the United States Attorneys Office in the State of Utah to make that motion or to make that promise?"
> A: "I did not."
>
> Transcript of Evidentiary Hearing March 11, 2004, 25:14–20.
>
> Q: "Did you think that you as an Assistant United States Attorney in the District of Colorado could bind the United States Attorney in his decision making in the District of Utah?"
> A: "Yes."
>
> Transcript of Evidentiary Hearing March 11, 2004, 51:11–15.

**10.** AUSA Gill testified:

> Q: "On those two prior occasions who actually filed the document that would have been the Rule 35(b) motion, did you do it or did the lawyer from Missouri do it?"

did not seek prior approval and did not believe that he needed to obtain prior approval by the United States Attorney or an AUSA in the other District concerning the filing of a Rule 35(b) motion in their district. In addition, AUSA Gill stated that he did not need internal approval from his supervisor in Colorado to make such an agreement in those cases or in this case.[11]

On or about March 27, 2003, AUSA McKelvie, Mr. Richard Van Wagoner, and Mr. Jason Crobarger (defendant Crobarger's son) met in McKelvie's office in Salt Lake City and all participated in a telephone conference call to AUSA Gill in Denver concerning the filing of a Rule 35(b) motion. During the telephone call, AUSA Gill told AUSA McKelvie of his desire to file a Rule 35(b) motion, and

asked for the format to be sent to him and stated that he would do all of the work to prepare the motion. At that time, AUSA Gill informed AUSA McKelvie that he would ask for "time served" in the motion. AUSA McKelvie testified that he related to AUSA Gill and Mr. Van Wagoner that he *"thought it was very unlikely that our screening committee would agree to such a severe reduction in Mr. Crobarger's sentence"* ... and further testified that "I believe that it was Mr. Van Wagoner who, who said something about well *if the screening committee won't agree with that,* [what] kind of options will we have and my response was well, *I think that we can probably still file the motion and you can, you can make an argument about how much the reduction should be."* [12]

A: "In each case the prosecutor or one appointed by the prosecutor filed the motion on behalf and each jurisdiction is different in how they format their Rule 35(b) so I find it very necessary to talk to the prosecutor or some other attorney in the U.S. Attorneys Office in that district where I wanted to file the motion to get the proper format and that was done in both Oregon and Missouri."

Q: "In the Oregon and Missouri cases when you entered into an agreement with those defendants to file a Rule 35(b) motion did you believe that you needed to seek the approval of or that you needed to persuade the United States Attorneys Offices in Missouri or Oregon in order for your promise to be binding?"

A: "I did not."

Transcript of Evidentiary Hearing March 11, 2004, 24–25:22–13.

11. AUSA Gill testified:

Q: "Was there any procedure in, any internal procedure in your office that required you to seek approval of a supervisor before you entered into that agreement with an inmate?"

A: "... At the time I was dealing with Walter Walsh and Mr. Crobarger my, my supervisor was one who was more of a live and let live type supervisor. He and I had worked over the last 8 years and he met with me and I apprized him of my cases but

I never had to specifically seek his approval to do what I did in this case and that was to offer Mr. Crobarger a reduction of roughly 50 percent off.... To answer your question specifically I did not go to that supervisor and say I want your specific approval for this and in fact for all of the 35(b) motions that I did out of state and in state I did not specifically seek that supervisor's approval."

Transcript of Evidentiary Hearing March 11, 2004, 25–27:25–11.

12. Transcript of Evidentiary Hearing March 11, 2004, 98:8–24 (emphasis added). AUSA McKelvie further testified:

Q: "What happened—describe for the court please what happened during the meeting?"

A: "... We placed the phone call to Mr. Gill. He was there in his office and I don't recall in real specific form who said what during what period of time but the general topic of the conversation was what mechanics we needed to employ in order to facilitate the filing of a Rule 35(b) motion on Roger Crobarger's behalf."

Q: "So that question came up as to how mechanically to accomplish this?"

A: "Yes, sir."

Q: "And who brought it up?"

A: "I believe that Mr. Gill did. He, he affirmatively expressed a willingness to basically do all the paperwork and everything that

Following the conference call, AUSA Gill received the format for the motion from AUSA McKelvie, put the motion together and sent it to McKelvie for filing. McKelvie submitted the motion and an accompanying memorandum to the Screening Committee. AUSA McKelvie's Memorandum to Screening Committee stated in relevant part:

> was necessary. Asked me if I would provide him an electronic copy of a go by for a motion that we would use with our court's caption and our office's heading and that he would then use that to provide the text, the corpus if you will of the motion and then provide it back to us for filing."
>
> Q: "And what was your response to that request?"
>
> A: "I indicated to him that I would be glad to provide that to him and that then I would, when he finished *I would engage in the necessary actions to attempt to get the motion filed.*"

Transcript of Evidentiary Hearing March 11, 2004, 95–96:16–17 (emphasis added).

Mr. Van Wagoner testified that he recalled Mr. Gill's words to the effect that: " 'I just want you to know up front that I'm going to ask for time served' and that was I believe the first time I had heard that but at that point *Mr. McKelvie said, 'I don't know if my committee will approve that.* If not[,] we'll file the motion without a recommendation and Van Wagoner can argue it.' " Mr. Van Wagoner further testified that: "I understood that Mr. McKelvie had agreed to file the motion either with the recommendation of credit for time served or without and if it was without then I would have the opportunity to argue it and I already knew that Mr. Gill had agreed to come and speak on Mr. Crobarger's behalf," but that he "did not hear" conversation to the effect that Mr. McKelvie conditioned the filing of the Rule 35(b) motion on a review by a screening committee. Transcript of Evidentiary Hearing March 11, 2004, 62–63:6–20 (emphasis added).

Mr. Jason Crobarger's testimony was essentially the same:

Q: "And did the subject of a Rule 35(b) motion, was that raised during the telephone conversation?"

A: "Yes, sir."

Q: "And can you tell me what Mr. McKelvie indicated to Mr. Gill he was willing to do?"

The Purpose of this memo is to forward a request by United States Attorney's Office, District of Colorado, that we file a Rule 35(b) Motion on behalf of Roger Charles Crobarger....

While incarcerated in Colorado, Crobarger became aware of a prison smuggling operation headed by a prison employee.

A: "He specifically talked about filing the Rule 35. He was happy to deal with sister agencies and that he was, he was happy to file this Rule 35 motion."

Q: "Was there any indication about whether he needed approval of a *screening committee* in order to file such a motion?"

A: "The only such words that came out of his mouth to that effect was in the recommendation for time served or any other recommendation ... [for] a reduction in sentence which would have to be put forth to the *committee* but in terms of filing the motion there was none."

Q: "And did, do you remember whether or not Mr. McKelvie addressed the situation about what would happen if the *screening committee* did not approve the time served recommendation?"

A: "*He said specifically that it could be filed without a recommendation and that would be left to Rick Van Wagoner to argue himself sir.*"

Transcript of Evidentiary Hearing March 11, 2004, 91–92:20–14 (emphasis added).

AUSA Gill testified that "my understanding from the conference call is that [ ] submission of the 35(b) was to be done and ... that *either Mr. McKelvie or somebody in his office would file it.*" Transcript of Evidentiary Hearing March 11, 2004, 34–35:10–3 (emphasis added). However, AUSA Gill also testified as follows:

Q: "What role did you believe Mr. McKelvie would have from that, after the conference call and after some *reference to a screening committee,* whenever you first heard about *a screening committee, what do you believe was necessary in order to get a Rule 35(b) motion filed?* "

A: "*Well obviously if it were going through the U.S. Attorneys Office for Utah it would have to be submitted to the screening committee.*"

Transcript of Evidentiary Hearing March 11, 2004, 35:18–25 (emphasis added).

He was never a part of the operation, and brought it to the attention of authorities. Although the case had prosecution problems, the organization was shut down and the employee dismissed. There may have been a misdemeanor conviction.

Attached are two documents: The proposed motion, as drafted by George Gill, AUSA from Colorado, and a letter from Crobarger's attorney Richard Van Wagoner, outlining the cooperation and current situation.[13]

Thereafter, the Screening Committee determined not to approve the filing of any motion to reduce the defendant's sentence under Rule 35(b). After learning of the Committee's refusal to approve the filing of the Rule 35(b) motion, Mr. Van Wagoner sent a letter to the United States Attorney for the District of Utah, Paul Warner, asking for reconsideration. That request for reconsideration was also denied by the United States Attorney for Utah.

### ANALYSIS

### I. Whether a Promise to Testify and Cooperate in the Future, if Necessary, Constitutes Adequate Consideration by Defendant to Support an Agreement by the Government to File a Rule 35(b) Motion.

 The eminent Williston summarized the law concerning adequacy of consideration thusly:

> It is an elementary and oft quoted principle that the law will not inquire into the adequacy of consideration so long as the consideration is otherwise valid to support a promise. By this is meant that so long as the requirement of a

bargained-for benefit or detriment is satisfied, the fact that the relative value or worth of the exchange is unequal is irrelevant so that anything which fulfills the requirement of consideration will support a promise, regardless of the comparative value of the consideration and of the thing promised. The rule is almost as old as the doctrine of consideration itself.

3 Williston on Contracts § 7:21 (4th ed.2004).

The government argues that the promise made to Defendant by AUSA Gill (Colorado) is unenforceable because it was not supported by consideration and therefore it was a gratuitous promise. Further, that since AUSA Gill's promise to file the 35(b) was made after defendant provided the assistance in question, it was not adequate consideration as a matter of law. The government relies on the Fourth Circuit case *United States v. Ringling,* 988 F.2d 504 (4th Cir.1993), and the Second Circuit case *Roe v. United States Attorney,* 618 F.2d 980 (2d Cir.1980). In *Ringling,* as well as *Roe,* promises made to a defendant found to be gratuitous were held not to be supported by valid consideration. Defendant argues that the present case is factually distinct from those cases because here, in addition to past rendition of promised assistance, defendant did in fact promise future testimony and cooperation, if necessary, in exchange for the government's promise to file a Rule 35(b) motion. Also, in *Ringling,* the parties entered into a conditional agreement wherein the government agreed to evaluate the value of defendant's assistance *before* agreeing to file the motion.

---

**13.** Screening Committee Memorandum from AUSA McKelvie, June 10, 2003 (omitted history of defendant's conviction). The proposed Rule 35(b) Motion prepared by AUSA Gill to submit to the Screening Committee stated:

"For the reasons stated, the United States recommends that the sentence of the defendant be reduced to time served." Proposed Rule 35(b) Motion attached to Memorandum to Screening Committee.

Defendant agrees that most of the assistance was provided by defendant prior to AUSA Gill's promise to file a Rule 35(b) motion, but maintains that at the time Gill promised to file the 35(b) motion, defendant promised to testify in the future and to provide any other assistance that might be needed to accomplish the successful prosecution of Walsh. Defendant argues that although additional assistance in the end was unnecessary, defendant nonetheless promised to provide such if needed in exchange for the Rule 35(b) motion and therefore the future promise constitutes adequate and sufficient consideration to make the agreement enforceable.[14]

In this case, the record is clear that defendant agreed to continue to assist the government in the future in exchange for the promise which was made by AUSA Gill to file the 35(b) motion.[15] Gill testified that he considered defendant to be under a continuing obligation which required future performance if needed. That promised future performance was valued and necessary to insure the ultimate successful prosecution of Walsh.

This court holds that the promise made by AUSA Gill was made in significant part in exchange for defendant's promise to provide future assistance if necessary and therefore the promise was not gratuitous and was supported by adequate consideration.

## II. Whether an Assistant United States Attorney for the District of Colorado Can Bind and Therefore Require the United States Attorney for the District of Utah to File in the District of Utah a Rule 35(b) Motion on Behalf of Defendant.

■ Circuit Courts of Appeal that have encountered this problem in the context of plea agreements have split as to whether such an agreement made by a government prosecutor in one district can bind the United States Attorney in another district where the sentence sought to be reduced was imposed in that District. The Second Circuit holds that in the absence of language expressing a broader intention, prosecutors in one district cannot bind prosecutors in another district. In *United States v. Russo*, 801 F.2d 624, 626 (2d Cir.1986), that Circuit Court ruled that: "A plea agreement binds only the office of the United States Attorney for the district in which the plea is entered . . ." *Accord United States v. Annabi*, 771 F.2d 670, 672 (2d Cir.1985). The Second Circuit has noted a possible exception in fact situations wherein "it affirmatively appears that the agreement contemplates a broader restriction." *Russo*, 801 F.2d at 626.[16] However,

---

**14.** In *U.S. v. Edwards*, 2000 WL 219754, 200 U.S.App. LEXIS 2848 (4th Cir.2000)(unpublished opinion), defendant Edwards agreed to work with the government following his sentencing in exchange for a 35(b) motion. Edwards provided the government with help in the investigation and prosecution of three individuals, and also promised to testify in the future against the defendants. Edwards did in fact testify against at least one of the defendants, and the other plead guilty. However, the government did not file the Rule 35(b) motion. Edwards moved for a reduction of his sentence under § 2255. That motion was granted, and the court found that the government had breached its agreement. In its rul-

ing, the court noted "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Edwards*, 2000 WL 219754, *2 (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)).

**15.** *See* FN 8, *supra*.

**16.** In *United States v. Annabi*, 771 F.2d 670, 672 (2d Cir.1985), the court found "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered *unless it affirmatively appears*

that court has ruled that "the mere use of the term 'government' in the plea agreement does not create an affirmative appearance that the agreement contemplated barring districts other than the particular district entering into the agreement." *United States v. Salameh,* 152 F.3d 88, 120 (2d Cir.1998) *quoting United States v. Laskow,* 688 F.Supp. 851, 853 (E.D.N.Y.1988), *aff'd,* 867 F.2d 1425 (2d Cir.1988).

The Fourth Circuit has taken a much broader view, holding that the prosecutor in one district can speak for and bind the prosecutor in other districts, because the same government is involved in all districts. This reasoning is set out in two cases—*United States v. Carter* and *United States v. Harvey.* In *United States v. Carter,* 454 F.2d 426, 427–28 (4th Cir. 1972), the court held:

The United States government is the United States government throughout all of the states and districts ... If there be fear that an United States Attorney may unreasonably bargain away the government's right and duty to prosecute, the solution lies in the administrative controls which the Attorney General of the United States may promulgate to regulate and control the conduct of cases by the United States Attorneys and their assistants. The solution does not lie in formalisms about the express, implied or apparent authority of one United States Attorney, or his representative, to bind another United States At-

torney and thus to visit a sixteen year sentence on a defendant in violation of a bargain he fully performed. There is more at stake than just the liberty of this defendant. At stake is the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government.[17]

In *United States v. Harvey,* 791 F.2d 294, 302–03 (4th Cir.1986), the court further explained its reasoning which was first set out in *Carter* as follows:

It is the Government at large—not just specific United States Attorneys or United States "Districts"—that is bound by plea agreements negotiated by agents of Government. Whenever a United States Attorney negotiates and enters a plea agreement, it is the Government that "agrees" to whatever is agreed to. Of course the Government may—and quite readily can—"agree" through its agents that only certain of its agents are to be obligated in particular respects, or that the Government's obligation is limited territorially or temporally, or that the Government's obligation is otherwise qualified. But the mere fact that a particular agent, holding office in a particular district, and for a limited term of office makes the "agreement"—"agrees"—does not impose those limitations. In sum, under that settled circuit law, the proper way for plea agreements to express such lim-

*that the agreement contemplates a broader restriction".* (Emphasis added.)

**17.** The *Carter* court pointed out that many federal crimes have multi-state ramifications and are committed by persons acting in concert. The court hypothesized that the efficient administration of justice would support the authority of the prosecutor in one state to obtain an indictment and bargain for a guilty plea for a crime that was committed through many states, agreeing that all offenses in the

other jurisdictions would be disposed of in the single case. The court added that if hypothetical codefendants were added, the desirability of the result becomes more apparent. Finally, the court concluded that a contrary result would constitute a strong deterrent to the willingness of defendants accused of multi state crimes to cooperate in the disposition of their cases and in apprehending and prosecuting codefendants.

itations is as limitations on the Government's general obligation—a thing quite easily done—and not by technically inaccurate identifications of particular agents or agencies of Government as the contracting party.

The Tenth Circuit has yet to rule on this issue, but in *United States v. Thomas,* 580 F.2d 1036, 1038 (10th Cir.1978), that court cited the Fourth Circuit in *Carter* and held "[a]n unkept promise by the Government in a plea bargaining situation ... may justify either a setting aside of the plea of guilty or a remand for the purpose of compelling specific performance of the Government's promise." *Citing Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and *United States v. Carter,* 454 F.2d 426 (4th Cir.1972).

In *In re Grand Jury Proceeding 90–1 (Bullick),* 754 F.Supp. 829, 831–32 (D.Colo. 1990), the court held that unless there existed an affirmative appearance that an agreement contemplated some kind of broader restrictions, an Assistant United States Attorney in one district may not bind another district. *Citing United States v. Russo,* 801 F.2d 624, 626 (2d Cir.1986); *United States v. Annabi,* 771 F.2d 670, 672 (2d Cir.1985); *United States v. Abbamonte,* 759 F.2d 1065, 1072 (2d Cir.1985) (additional citations omitted). The court stated that it "has considered the Fourth Circuit's decision in *United States v. Harvey,* 791 F.2d 294, 302–03 (4th Cir.1986), and declines to adopt its analysis." *Bullick,* 754 F.Supp. at 831–32. *Accord United States v. Torres,* 1993 WL 463413 (D.Kan.1993) (unpublished opinion).

The aforesaid cases do not directly deal with the narrow issue before this court, i.e. whether an agreement to file a Rule 35(b) motion by a prosecutor in one District could and would require the filing of a Rule 35(b) motion by the United States Attorney in the District where the sentence sought to be reduced was imposed. It follows that the split of authority among the Circuit courts does not necessarily apply to this case because those cases dealt with plea agreements. The issue which underlies the split of authority and which is raised in the parties' briefs is whether as a general matter a prosecutor in one District can bind the office of the United States Attorney in another District.[18]

In the case at bar, there is nothing which affirmatively appears in the agreement between AUSA Gill and defendant Crobarger that sets forth a restriction or a broader scope than to bind AUSA Gill to his promise that he would file a Rule 35(b) motion on behalf of Crobarger. No mention was made of anything to be done by prosecutors in the District of Utah. The agreement was silent concerning implementation of AUSA Gill's promise. That silence apparently was based upon AUSA Gill's belief that nothing needed to have been said or included in the agreement about what prosecutors in Utah would do. It is apparent that AUSA Gill was of the view that he could bind the United States Attorney in Utah since Gill believed he was an agent of the United States government authorized and able to bind prosecutors in Utah and elsewhere to file a Rule 35(b) motion. If that is what AUSA Gill thought, it possibly would explain why he did not think it even necessary to contact

---

**18.** Application of that issue in this case would implicate restrictions such as a plea agreement rather than only a Rule 35(b) motion. For instance, under the Fourth Circuit line of cases a plea agreement is regarded as between the defendant and the entire United States, not any one district. The oral agreement between AUSA Gill and Crobarger in this case neither involves a plea agreement as such, nor a bargained for requirement to be performed by prosecutors outside the District of Colorado.

or request permission from Utah prosecutors before making such a promise. In any event, it appears that AUSA Gill had the opinion that as a representative of the United States government he could bind the government and its agents beyond the District of Colorado, without reference to such in an agreement and without prior knowledge or approval from the United States Attorney for the District of Utah.[19] This is somewhat similar to the position taken by the Fourth Circuit in plea bargaining situations. This is not a plea agreement case, and may not be governed by the principles grappled with in the split of authority above discussed. However, regardless of what AUSA Gill may have believed when he made the agreement with Crobarger, he came to realize that in Utah the filing of a Rule 35(b) motion requires the approval of the United States Attorney for the District of Utah.[20]

■ This court declines to follow the Fourth Circuit cases to the extent they arguably could be applicable here,[21] and adopts the reasoning of the Second Circuit cases that agreements made in one District by an AUSA bind only the office of the United States Attorney in that District, in the absence of some broader intended scope or restriction. Under the facts of this case, no such broader scope or restriction exists.

Accordingly, this court holds that the agreement between AUSA Gill and Crobarger was not binding on the United States Attorney for the District of Utah in the absence of his consent, or acceptance of an alleged ratification.

**III. Whether AUSA Richard McKelvie (Utah) Consented to File a Rule 35(b) Motion in the District of Utah, and if so Whether Such Consent was Binding on the United States Attorney for the District of Utah.**

In *United States v. Friedland,* 83 F.3d 1531 (3d Cir.1996), the Third Circuit encountered essentially the same problem that is presented in this case: whether an agreement in one District to file a Rule 35(b) motion would bind the United States Attorney in another District without the consent of the United States Attorney in that District. The court held in *Friedland* that under the facts of that case prosecutors in New York could not enter into an agreement with defendant which would bind prosecutors in the District of New Jersey to file a Rule 35(b) motion for reduction of the defendant's sentence, which sentence previously had been imposed in the District of New Jersey. *Friedland,* 83 F.3d at 1539. The *Friedland* court distinguished the Fourth Circuit case of *Carter,* and reasoned:

> In *Carter,* the alleged promise was that the District of Columbia prosecution would be "the sole prosecution against defendant." *Id.* at 428. The agree-

---

**19.** *See* FN 9, *supra.*

**20.** AUSA Gill recognized in his testimony that as a condition to filing the motion in Utah the matter would have to be presented to the Utah Prosecutor's Screening Committee for action by that Committee. *See* testimony of AUSA Gill at evidentiary hearing set forth at FN 12, *supra.*

**21.** Although no plea bargain as such exists in the case at bar, the agreement between AUSA

Gill and Crobarger has a thrust similar to that of a plea bargain, namely that the defendant bargained for a reduction of sentence by agreeing to cooperate and assist the government as a quid pro quo. Even assuming that to be the case, this court holds that extraterritorial application of the agreement so as to bind the United States Attorney in Utah under the facts of this case would be unwarranted.

ment, if made, would have been binding with respect to a future prosecution in another district. Thus, the Carter court remanded the matter to the district court for an evidentiary hearing to determine if the government made the promise and, if so, whether the defendant relied on it.

Here the situation is different. The prosecution in New Jersey had been completed long before Friedland opened his negotiations with ... the assistant United States attorneys in New York. We need not and will not determine how far a United States Attorney in one district may go in making agreements binding on other districts. Rather, *we hold only that the United States Attorney in New Jersey had exercised such a degree of control over the Friedland prosecution and the prosecution had progressed so far that, **without his or her consent**, as a matter of law the United States Attorneys in the Eastern and Southern Districts of New York could not bind the government to make a motion to reduce Friedland's District of New Jersey sentence.*

*Friedland*, 83 F.3d at 1540 (emphasis added). In *Friedland* the interest of the District of New Jersey was so strong, the degree of control was so advanced and the prosecution had progressed so far that without the consent of the United States Attorney for New Jersey for a reduction of sentence no binding or effective agreement could have been made by prosecutors in New York with the defendant whose prior sentence had been imposed in New Jersey. In *Friedland,* the United States Attorney in New Jersey was the prosecutorial authority with such a dominant degree of control, in a prosecution which had progressed so far, that only the United States Attorney in New Jersey could file or authorize others by his consent to file a Rule 35(b) motion.

In the case at bar, neither AUSA Gill, Mr. Van Wagoner nor defendant sought or received prior approval or consent from the United States Attorney's Office for the District of Utah. This in spite of the fact that prosecutors in Utah had previously prosecuted defendant in the District of Utah in two major prosecutions for which defendant was and is incarcerated. A fact pattern similar to *Friedland* is presented in the case at bar. It is manifest in this case that the United States Attorney in Utah exercised the major and most dominant degree of control over this defendant in the previous prosecutions and ultimate commitment. The two prosecutions in the District of Utah were of major significance. The District of Utah maintained a continuing concern and interest in the status of defendant's incarceration. The United States Attorney in Utah conducted the prior prosecutions against defendant long before the agreement between AUSA Gill and defendant was entered.

■ This court holds as a matter of law that in the absence of consent by the United States Attorney in Utah the agreement between AUSA Gill and defendant Crobarger would not be binding on the United States Attorney for the District of Utah. Clearly, the United States Attorney for Utah, by action of his Screening Committee in refusing to approve the filing of the Rule 35(b) motion, as well as his personal denial of any reconsideration of that action, made it clear that such a filing in the District of Utah would not be approved. That would seem to be the end of the matter concerning consent, i.e. that there was clear non-consent by the person whose consent was necessary.

■ Notwithstanding the foregoing, defendant argues that AUSA McKelvie gave his unqualified consent at least to the filing of the Rule 35(b) motion. Even if that

were so, which it is not, it would be ineffectual because AUSA McKelvie was not empowered to give unconditional consent. AUSA McKelvie's authority to file such a motion was subject to approval by the Prosecutor's Screening Committee, and that requirement was made known to AUSA Gill as well as all concerned. Because of that screening requirement, McKelvie was not authorized and could not give effective consent because he was not internally authorized to bind the United States Attorney for Utah absent the consent and authorization of the Utah Prosecutor's Screening Committee. AUSA McKelvie was willing to "attempt" to file and accommodate his counterpart in Colorado. However, AUSA McKelvie made the necessity of approval by the Prosecutor's Screening Committee known to AUSA Gill, and he expressed serious doubt that the Screening Committee would approve any recommendation for "time served". He did express the opinion that a filing without a recommendation "probably" would be allowed, stating that even if the Screening Committee would not agree with a recommendation for "time served", "I *think* that we can *probably* still file the motion ..."[22] AUSA Gill ignored AUSA McKelvie's conditional and cautionary opinion, and submitted the proposed Rule 35(b) motion to AUSA McKelvie for submission to the Screening Committee with the recommendation for "time served". AUSA McKelvie's opinion was *conditional,* and his prediction that the Committee "probably" would permit the filing was wrong. Manifestly, everyone involved in the pivotal conference call in which the Rule 35(b) filing was discussed, were advised and put on notice of the necessity of approval by the Screening Committee.[23] The fact that AUSA McKelvie was wrong

about what the Committee would do was no different than lawyers who erroneously predict actions by the courts.

This court finds that AUSA McKelvie did not effectively or unconditionally give his consent to the filing a Rule 35(b) motion in the District of Utah. AUSA McKelvie only stated his opinion that "probably" he would be able to file such a motion, but he also stated that he would need to submit the matter to the Screening Committee. AUSA McKelvie submitted the matter to the Screening Committee and that committee refused to authorize AUSA McKelvie to file a Rule 35(b) motion. The United States Attorney for Utah also refused.

Based upon the foregoing, under all of the facts and circumstances of this case, this court finds by a preponderance of the evidence that neither AUSA McKelvie nor the United States Attorney for Utah effectively consented to file a Rule 35(b) motion on behalf of defendant Crobarger.

IV. **Whether Assistant United States Attorney McKelvie ratified the agreement made between AUSA Gill and Crobarger, and if so Whether Such Ratification was Binding on the United States Attorney for the District of Utah.**

 Ratification is "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." RESTATEMENT (SECOND) AGENCY § 82. Under the doctrine of ratification, even voidable contracts may be binding. *See* RESTATEMENT (SECOND) OF CONTRACTS § 85. However, there are at least two circumstances in

---

**22.** *See* AUSA McKelvie's testimony at FN 12, *supra.*

**23.** *See* testimony of AUSA Gill, Mr. Van Wagoner, and Roger Crobarger, *supra.*

which the doctrine of ratification is not binding. *First,* the doctrine of ratification does not apply where "the person who deals with the agent had knowledge that the agent lacked authority to make the agreement." *Stone v. First Wyoming Bank N.A., (Lusk),* 625 F.2d 332, 345 (10th Cir.1980). *Second,* ratification is not binding where the "third party intends to deal, not with the principal, but rather with the agent in the agent's individual capacity." *Id.*

In this case, defendant argues that AUSA McKelvie ratified the agreement between AUSA Gill and defendant for the filing of a Rule 35(b) motion. The ratification is said to have occurred during the March 27, 2003 conference call involving AUSA McKelvie, AUSA Gill, Mr. Van Wagoner, and Mr. Jason Crobarger. It is claimed that AUSA McKelvie, being aware of the promise made by AUSA Gill to file the motion, ratified that promise. The court rejects that claim for 'at least four reasons: *First,* it is clear that AUSA McKelvie expressly rejected the promise by AUSA Gill concerning a recommendation for "time served". Nevertheless, AUSA Gill persisted in that very recommendation in the proposal submitted to the Screening Committee. This court finds that AUSA McKelvie did not ratify the Gill—Crobarger agreement concerning the heart of the AUSA Gill—Crobarger agreement, i.e. the recommendation for "time served". *Second,* AUSA McKelvie did not unconditionally ratify the promise by AUSA Gill that he would or could file such a motion. This court has already found from all the facts and circumstances of this case that AUSA McKelvie did not provide unconditional consent, and that he only prognosticated that the Screening Committee would "probably" approve the filing without recommendation. The bottom line in this regard is that AUSA McKelvie was not authorized to bind the United States Attorney for Utah to file such a motion, whether by consent or ratification. *Third,* the record is clear that AUSA Gill promised and intended to bind the prosecutor's office in the District of Colorado in his dealings with defendant, but he only *assumed*—without any prior agreement or contact—that prosecutors in the District of Utah would file the 35(b) motion. AUSA Gill may have assumed that a request by him to the AUSA in Utah would be granted in a similar fashion as his previous requests to the AUSA in Oregon and the AUSA in Missouri. However, as to the District of Utah that assumption was wrong. AUSA Gill's assumption was wrong not only because of the required approval by the Utah prosecutors' Screening Committee, but for the additional reason that the United States Attorney for the District of Utah retained a very great and dominant interest in the case of the prior prosecutions and sentencings which had been conducted and imposed in the District of Utah.[24] *Fourth,* there was no agreement which if ratified would be binding on the United States Attorney in Utah. The agreement between AUSA Gill and defendant Crobarger did not implicate or

---

**24.** The United States Attorney for the District of Utah had concluded its major prosecutions against defendant long before the agreement between AUSA Gill and defendant was made. Utah retained a dominant interest in the sentence already imposed upon Crobarger. Under the facts here, only the United States Attorney for Utah could file a post-sentence Rule 35(b) motion for reduction of the sentence which had been imposed in Utah, as was the case in *United States v. Friedland, see supra.* Under these facts, filing such a motion in the District of Utah would have required the consent of the United States Attorney for the District of Utah—and any alleged ratification also would have required such consent and/or approval.

require anything to be done by Utah prosecutors.

In *United States v. John Doe*, 940 F.2d 199 (7th Cir.1991), the court reasoned that a promise made by a prosecutor in one District to file a Rule 35(b) motion—which promise did not purport to require anything to be done by prosecutors in the outside District where the defendant was prosecuted and sentenced—could not bind prosecutors in that District even if ratification had occurred. The court stated:

> It makes no sense to speak of the Illinois office ratifying this promise because, even if it were ratified, the promise does not purport to require anything of the U.S. Attorney for the Northern District of Illinois.

*Id.* at 204. In *John Doe*, the court found that the agreement in question only required performance of the promise made by prosecutors in their own District, so that even if ratification had occurred, the agreement would not be binding on the United States Attorney in the Northern District of Illinois. That is essentially the same situation that exists in the case at bar.

■ Both of the circumstances previously discussed which render the doctrine of ratification inapplicable are present in this case. Manifestly, as to the first circumstance, it is apparent that AUSA Gill came to know that AUSA McKelvie lacked authority to bind the United States Attorney for Utah, and that it was necessary to submit the motion to the prosecutors' Screening Committee. AUSA Gill was told by AUSA McKelvie that he (McKelvie) would *submit* the Rule 35(b) motion for action by the Screening Committee. AUSA McKelvie's apparently believed that the Screening Committee would permit the filing, but in essence he let AUSA Gill know that his authority was conditional, requiring approval through the Prosecutors Screening Committee. The memorandum by AUSA McKelvie to the Prosecutors' Screening Committee is consistent with his understanding that the Screening committee would have to approve the filing. This certainly does not reflect any ratification by AUSA McKelvie. Rather, it reflects the condition to which any agreement, consent or ratification by McKelvie was subject, namely the condition that such had to be approved by the Screening Committee.

As to the second circumstance wherein the doctrine of ratification does not apply, it is apparent that AUSA Gill intended to deal with AUSA McKelvie in AUSA McKelvie's individual capacity. AUSA Gill mistakenly believed that he had the unrestricted and unconditional authority not only to bind the United States Attorney in Colorado, but that he was likewise empowered to bind the United States Attorney in Utah to implement his agreement with defendant. He must have also believed that AUSA McKelvie had similar authority, until he learned about the necessity of approval by the Screening Committee. But AUSA Gill continued to deal only with AUSA McKelvie in his individual capacity, even after he learned that McKelvie could not himself bind the Utah United States Attorney. AUSA Gill submitted the proposed Rule 35(b) motion to AUSA McKelvie for submission by McKelvie to the Screening Committee. At that time he (Gill) knew that the proposed motion would have to be approved by the Utah United States Attorney's Screening Committee, and that McKelvie's authority to bind was subject to approval by that Committee.

Taking into consideration all facts in the record, including testimony at the evidentiary hearing over which this court presided, this court finds by a preponderance of the evidence that there was no ratification

by AUSA McKelvie of the agreement between AUSA Gill (Colorado) and defendant. This court also finds by a preponderance of the evidence that neither the Screening Committee nor the United States Attorney for the District of Utah approved any such alleged ratification. Moreover, there could be no ratification of the AUSA Gill—defendant Crobarger agreement which would require the United States Attorney for Utah to file a Rule 35(b) motion, because there was nothing in that agreement which required the prosecutors in Utah to implement AUSA Gill's agreement or to take any action.

Based upon the foregoing, it is hereby

ORDERED, that defendant's Motion to Compel the United States Attorney for the District of Utah to file a Rule 35(b) Motion for reduction of the existing sentence heretofore imposed upon defendant Crobarger by this Court is DENIED.